UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN POSTAL WORKERS UNION, AFL-CIO**, <br><br> *Plaintiff,* <br><br> v. <br><br> **UNITED STATES POSTAL SERVICE**, <br><br> *Defendant.* | Case No. 1:24-cv-442-RCL |

## MEMORANDUM OPINION

The American Postal Workers Union ("APWU" or the "Union") has been engaged for nearly twenty years in a workplace safety dispute regarding conditions at a United States Postal Service ("USPS" or the "Postal Service") facility in Colorado. In that time, and pursuant to their collective bargaining agreement ("CBA"), the parties have submitted the case to regional arbitration four times before three different arbitrators. In the most recent episode, the arbitrator ruled in favor of the Union and ordered USPS to exclusively allow Union tractor-trailer operators ("TTOs") to perform certain docking operations for trucks brought to the facility by non-Union private contractors.

The Union alleges that USPS has not complied with this award. In response, the Union first invoked the jurisdiction of the arbitrator who rendered the most recent award and asked for a remedy hearing. USPS agreed to arbitration, and the arbitrator provided his availability for the hearing. But then, the Union changed course: it decided to escalate its grievance to a national-level dispute procedure, after which the remedy hearing was held in abeyance and eventually abandoned. While that national-level dispute was pending, APWU filed a Complaint in this Court. USPS now moves to dismiss the Complaint for lack of subject-matter jurisdiction or, in the

1

alternative, for failure to state a claim. The Union, for its part, has moved for summary judgment, seeking an injunction to enforce the most recent arbitral award, as well as attorneys' fees and costs.

For the reasons provided herein, the Union's voluntary decisions to initiate a remedy hearing and to bring a national-level interpretive dispute deprive this Court of subject-matter jurisdiction to consider its Complaint. Therefore, USPS's Motion to Dismiss will be **GRANTED**, and the Union's Motion for Summary Judgment will be **DENIED**.

## I. BACKGROUND

### A. Statutory Background

Pursuant to 39 U.S.C. § 1203, the American Postal Workers Union is the exclusive collective bargaining representative of USPS's clerical workers, maintenance personnel, motor vehicle operators, and support services employees. Compl. ¶ 4, ECF No. 1. The relationship between the Union and USPS is governed by a CBA that provides a multi-stage dispute resolution procedure. According to Article 15 of the CBA, "Step One" of the grievance process requires an aggrieved employee to first discuss any grievance with his or her immediate supervisor; the Union may opt to do so on an employee's behalf. *See* CBA Art. 15 at 87,[1] Mot. for Summ. J. Ex. B, ECF No. 12-5. If the supervisor rules against the employee or the Union, the Union may then appeal to "Step Two," at which point the dispute is escalated to the head of the installation where the employee works or, if that installation has fewer than twenty employees, a designated official outside of the installation.[2] CBA Art. 15 at 88–89. If the Step Two proceeding again results in a decision adverse to the grievant, there are two possible routes. If the dispute concerns a

---

[1] The pagination for Article 15 of the CBA refers to the page number printed at the bottom of the page in the attachment provided by the Union as an exhibit to their Motion for Summary Judgment, ECF No. 12.

[2] Other provisions of the CBA provide for certain grievances to be initiated directly at Step Two. CBA Art. 15 at 89 (referring to Article 2 and Article 14 of the CBA). This nuance is immaterial for purposes of this litigation.

disciplinary grievance or a contract grievance involving a Local Memorandum of Understanding, the Union may cause the dispute to be submitted directly to arbitration. *Id.* at 90. Otherwise, the Union may appeal to "Step Three" within fifteen days, at which point the grievance is submitted to an official at USPS's Grievance/Arbitration Processing Center. *Id.* at 91. If the grievant does not secure his or her requested relief at Step Three, the Union may appeal to arbitration within twenty-one days. *Id.* at 93. The CBA further provides that "[a]ll decisions of an arbitrator will be final and binding." *Id.* at 100.

The CBA provides a separate grievance channel exclusively for disputes that involve "interpretive issues under [the CBA] or supplements thereto of general application . . . ." *Id.* at 105. These disputes, which are inherently national in character, skip the three-Step process just described, and are instead filed directly at "Step Four." *Id.* at 98. In a Step Four dispute, the grievant, represented by a national-level Union representative, confers and attempts to reach a mutually agreeable settlement with USPS's representative. *Id.* at 94. If no agreement is reached within sixty days, the Union may then appeal the dispute to national-level arbitration within thirty days. *Id.* at 95.

As the Union points out, and despite its name suggesting otherwise, Step Four is not an additional rung in the appellate ladder above the three-Step process described in the preceding paragraph; it is a separate procedure available only for interpretive disputes of national significance, which are filed at Step Four in the first instance. However, that is not to say that Step Four exists in a vacuum: the CBA provides that if the parties to a Step Four dispute decide that no national interpretive issue is presented, the dispute should be "returned to Step 3." *Id.* at 94. Moreover, the CBA contemplates that the outcome of a Step Four dispute may have relevance to a dispute pending at Step One, Two, or Three, and therefore provides that "[a]ny local grievances

3

filed on the specific interpretive issue"—i.e., any related Step One, Two, or Three proceeding—"shall be held in abeyance at the appropriate level pending resolution of the National [Step Four] interpretive dispute." *Id.* at 98.

### B. Factual and Procedural Background

The following allegations are drawn mostly from the Union's Complaint and an arbitral award attached thereto, but the narrative also includes facts drawn from declarations attached to the parties' motions. The Court may consider these declarations because, as explained below, this Opinion hinges on whether the Court may exercise subject-matter jurisdiction over this dispute, and "[a] court may consider materials beyond the pleadings in deciding whether it has subject-matter jurisdiction." *Kumar v. Garland*, No. 23-cv-1314-RCL, 2024 WL 4564273, at *2 (D.D.C. Oct. 24, 2024) (citing *Am. Freedom L. Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016)).

USPS truck drivers are sometimes required to perform a task known as "spotting," which entails first backing a truck into a loading dock, then connecting the truck to an independent power source during the loading or unloading process, and then disconnecting the power and pulling out of the dock. Compl. ¶ 12. The Union alleges that, in 2006, an independent contractor working for the Postal Service executed this procedure improperly at the Postal Service's Denver National Distribution Center ("NDC", then called the "Denver Bulk Mail Center"), causing an accident. *Id.* ¶ 9. The Union initiated a grievance, arguing that only unionized TTOs had the expertise to perform spotting safely. *Id.* ¶ 12. That grievance eventually worked its way up to a Step 3 arbitration, at which Arbitrator Mary Gregory ruled in favor the Union and gave USPS a choice of remedies: it could either "implement screening or verification measures" to ensure that private operators known to be unsafe were not permitted access to the facility, or else allow Union TTOs to spot the private operators' trailers. *Id.* ¶¶ 15–16; Reeves Arbitration Award 6, Compl. ex. 1,

ECF No. 1-1 (quoting Arbitrator Gregory's award). The Postal Service's seeming failure to comply with this award has led to two additional adverse arbitration decisions by Arbitrator Harry MacLean in February and August 2017, *see* Reeves Arbitration Award at 7, and a fourth adverse arbitral determination by Arbitrator Zane Reeves in August 2022 (the "Reeves Award"). *Id.* at 11–13. Arbitrator Reeves, remarking that the Postal Service had failed on multiple occasions to install and maintain a reliable means of identifying visiting drivers, ordered the Postal Service to comply with Arbitrator Gregory's alternative remedy: to allow Union TTOs to spot private operators' trailers. *Id.* at 13. Arbitrator Reeves gave USPS thirty days to comply with his order and stated that he would "retain[] jurisdiction until the US Postal Service fully complies with this order." *Id.* USPS never challenged any of the arbitrators' awards in court. Pittman Decl. ¶ 11, Pl.'s Mot. for Summ. J. Ex. D, ECF No. 12-7.

On the twenty-ninth day after the Reeves Award was issued, USPS ordered all private truck drivers to drop their trailers at the NDC's gate so that Union TTOs could perform the spotting, in conformity with the Reeves Award. Compl. ¶ 48. But after just one day of complying, USPS reversed course and announced that it would no longer permit Union TTOs to perform spotting on behalf of the private contractors. *Id.* ¶ 49. As a result, in November 2022, the Union sent a message to USPS "requesting that the arbitrator's jurisdiction be invoked and that a remedy hearing be scheduled" to address USPS's noncompliance with the Reeves Award. *See* Pittman Email, 1st Richardson Decl. Attach. A, Mot. to Dismiss Ex. 1, ECF No. 9-1. USPS contacted Arbitrator Reeves, who provided a handful of dates in January and February 2023 to hold the remedy hearing. *See* Martin Email, 1st Richardson Decl. Attach. B, Mot. to Dismiss Ex. 1. But instead of following through with its requested hearing before Arbitrator Reeves, the Union instead initiated a Step 4 national level dispute in February 2023. Foster Email, 1st Richardson Decl. Attach. C., Mot. to

5

Dismiss Ex. 1. The Union nominally framed the Step 4 dispute as a pure interpretive question about the CBA, with the operative question being "[a]t what point does a regional arbitration award become final and binding?" *Id.* However, the Union attests that the submissions which initiated the Step 4 dispute "specifically mentioned the Reeves Award," and that the intention animating the dispute was to "get the attention of managers at postal headquarters on what seemed to the Union to be a particularly egregious situation of non-compliance" and to "give the Union another opportunity for discussing the Reeves Award" with key USPS stakeholders. 1st Cash Decl. ¶¶ 18–19, Pl.'s Mot. for Summ. J. Ex. C., ECF No. 12-6. The proposed remedy hearing was held in abeyance due to the initiation of the Step Four dispute and the Union has evidently taken no further action in pursuit of a remedy from Arbitrator Reeves. *See* Richardson Email 1, 1st Richardson Decl. Attach. E, Mot. to Dismiss Ex. 1.

One year later, in February 2024, the Union filed a Complaint in this Court. *See generally* Compl. USPS moved to dismiss the suit in August 2024. *See* Mot. to Dismiss, ECF No. 9. The following month, the Union filed a combined Response and cross-Motion for Summary Judgment. *See* Mot. for Summ. J., ECF No. 12. USPS submitted its combined Reply and Response in October, *see* Def.'s Reply, ECF No. 16, and the Union filed its Reply two weeks later. *See* Pl.'s Reply, ECF No. 18. The Step Four dispute was still pending when the Complaint was filed in this Court, and the parties were in parallel discussions about setting a date for the national-level arbitration while briefing the dispute. *See* 1st Richardson Decl. ¶¶ 11–13, ECF No. 9-1; 2d Richardson Decl. ¶ 7, Def.'s Reply Ex. 1, ECF No. 16-1. The Union withdrew its Step Four dispute in mid-October, after USPS had submitted its final Reply brief in this Court, but before the Union had submitted its own Reply brief. *See* 2d Cash Decl. ¶ 5, Pl.'s Reply Attach. A, ECF No. 18-1.

Both motions are now ripe for this Court's review. Because the Union has not exhausted its bargained-for dispute resolution procedures under the CBA by reaching a complete arbitration at Steps Three and Four before bringing its case to federal court, the Court will **GRANT** USPS's Motion to Dismiss and **DENY** the Union's Motion for Summary Judgment.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) and Subject-Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action or a claim over which the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party seeking to invoke the court's jurisdiction bears the burden of demonstrating that it exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). When evaluating a Rule 12(b)(1) motion, a court must accept the complaint's factual allegations as true. *Hill v. Smoot*, 308 F. Supp. 3d 14, 18 (D.D.C. 2018) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993)). However, because the Court has an obligation to independently assure itself of its subject-matter jurisdiction, the plaintiff's allegations "'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a [Rule] 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1350 (2d ed. 1987)).

### B. The Postal Reorganization Act and Alternative Dispute Resolution

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional authority to hear the case." *Westberg v. Fed. Deposit Ins. Corp.*, 926 F. Supp. 2d 61, 66 (D.D.C. 2013) (citing *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The Postal Reorganization Act of 1970, Pub. L. No. 91-375, 84 Stat. 719 (1970), provides statutory authority for the federal courts to exercise subject-matter jurisdiction over disputes concerning the Postal Service. Specifically, 39 U.S.C. § 409(a) provides

that the U.S. district courts "shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service," and 39 U.S.C. § 1208(b) further provides that "[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties . . . ."

However, even where a Court would otherwise have jurisdiction over an action, parties may agree by contract to pursue alternative dispute resolution mechanisms such as arbitration, in which case the Court ordinarily may not act on the dispute until those mechanisms have been exhausted. *See Sanders v. Wash. Metro. Area Transit Auth.*, 819 F.2d 1151, 1158 (D.C. Cir. 1987) ("[E]mployees who fail[]to exhaust the grievance and arbitration proceedings [] available to them [] may not seek redress in court on claims that could and should have been grieved.") (collecting cases); *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983) (Noting that "[o]rdinarily, . . . an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement" before he "may bring suit against his employer for breach of a collective bargaining agreement").

Accordingly, multiple courts in this District interpreting 39 U.S.C. § 1208 have held that jurisdiction does not lie until the parties have exhausted any mandatory remedial processes provided by a collective bargaining agreement and arrived at a final, binding arbitral award. *See Am. Postal Workers' Union, AFL-CIO v. U.S. Postal Serv.*, 646 F. Supp. 2d 1, 3 (D.D.C. 2009) (holding that "a union and its members must exhaust the remedies provided in their collective bargaining agreement . . . before they seek judicial intervention," and that "[a] federal court only has jurisdiction to vacate or enforce a labor arbitration award if it is final and binding") (quoting *Nat'l Post Off. Mail Handlers Loc. No. 305, LIUNA, AFL-CIO v. U.S. Postal Serv.*, 594 F.2d 988,

991 (4th Cir. 1979)); *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 65 F. Supp. 3d 134, 141 (D.D.C. 2014) ("To maintain a suit under [39 U.S.C. § 1208(b)], . . . a union first must exhaust the remedies provided for through the collective bargaining agreement."); *Sullivan v. Potter*, No. 05-cv-818-HHK, 2006 WL 785289, at *3 (D.D.C. Mar. 28, 2006) (holding, in a dispute between a union Motor Vehicle Operator and the Postmaster General, that "until [an] arbitration is final and the procedures set forth in the collective bargaining agreement are completed, [a] claim is premature and must be dismissed for failure to exhaust administrative remedies").[3]

## III. ANALYSIS

The Court concludes that it lacks subject-matter jurisdiction over this dispute for two independently sufficient reasons. First, by invoking Arbitrator Reeves's jurisdiction and cooperating with USPS to initiate a remedy hearing, the Union vitiated the finality of his 2022 arbitral award and was therefore required to go through with the remedy hearing before submitting its case to federal court. Second, the Step Four dispute—which, by the Union's own admission, concerned the same factual circumstances at the core of the Step Three dispute and the Complaint—had not produced an arbitral decision at the time the Complaint was filed (and still has not). The Union's half-measures under the CBA's grievance procedures have prevented the requisite final and binding arbitration awards from taking shape, so it has failed to exhaust its contractual remedies. The Court therefore lacks subject-matter jurisdiction and the case must accordingly be dismissed.

---

[3] For additional authority on this topic, see also *Noble v. U.S. Postal Serv.*, 537 F. Supp. 2d 210, 219–20 (D.D.C. 2008) (holding that "when a collective bargaining agreement contains a mandatory provision for dispute resolution through arbitration, an employer is entitled as a defense to rely on the plaintiff's failure to utilize those procedures," and concluding that the court lacked jurisdiction); *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 31 (D.D.C. 2006) ("To bring suit under [39 U.S.C. § 1208], . . . plaintiffs would first have to have exhausted the provisions of their collective bargaining agreement.") (collecting cases); *but see Roman v. U.S. Postal Serv.*, 821 F.2d 382, 386 (7th Cir. 1987) (acknowledging the Postal Reorganization Act's contractual exhaustion requirement, but treating failure to exhaust as a merits issue, rather than as a jurisdictional one).

### A. The CBA's Step Three and Step Four Arbitration Mechanisms Are Mandatory

Arbitration is "a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Therefore, the first step in assessing whether the Court has subject-matter jurisdiction is whether the CBA evinces the parties' intentions to require arbitration before a dispute be submitted to a federal court.

It is clear that, for ordinary grievances governed by Steps One through Three of the CBA, arbitration is a prerequisite to judicial review. In describing Step One, the mouth of the funnel for most grievances, the CBA uses unquestionably mandatory language: "Any employee who feels aggrieved *must* discuss the grievance with the employee's immediate supervisor within fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to learn of its cause." CBA Art. 15 at 87 (emphasis added). Step Two and Step Three follow in an appellate chain from Step One, which logically suggests that the contracting parties intended for Step One disputes to proceed through each phase of the grievance process, culminating in arbitration after Step Three. To suppose that a party could short-circuit this chain simply by opting to take their case to federal court, instead of pursuing it to its conclusion, would severely contravene "[f]ederal labor policy['s] . . . heavy presumption in favor of mandatory arbitration of disputes under collective bargaining agreements, unless the agreement expressly provides that arbitration is not the exclusive remedy." *Commc'n Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 435 (D.C. Cir. 1994); *see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85 (1960) ("[I]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . .").

The Union argues, however, that "Step [Four] is not an appellate procedure for reviewing regional arbitration awards," and is therefore "not a substitute for or a prerequisite to court action." Mot. for Summ. J. 7, 14.  The Union is correct that a typical appellate relationship does not exist between Steps Three and Four.  But as described above, like Step Three, Step Four contains its own independent arbitration provision, which cuts strongly against the argument "that arbitration is not the exclusive remedy" for disputes that reach Step Four.  *Commc'n Workers of Am.*, 40 F.3d at 435.  Certainly, the agreement does not "expressly provide" that the parties to a Step Four dispute may simply opt to bypass arbitration before bringing suit in federal court.  *Id.*

Moreover, if the Court were to interpret the CBA as *not* requiring arbitration of Step Four disputes, it would enable and incentivize plaintiffs to reframe quotidian grievances as national-level interpretive disputes, thus bypassing Steps One through Three and proceeding directly into court.  The plaintiffs' conduct in this very case suggests this concern is not at all farfetched: they first initiated a remedy hearing, then abandoned it in favor of a Step Four dispute that, according to their own representations, concerns the same subject-matter as the aborted remedy hearing and is meant to achieve the same outcome—to wit, compliance with the Reeves Award.  In light of the "heavy presumption in favor of mandatory arbitration" and the background principle that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," which extends to "the construction of the contract language itself," *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), the Court will not adopt such a self-defeating interpretation of the CBA.  The Court must conclude that both Steps Three and Four contemplate mandatory arbitration as a precondition for bringing suit in federal court.[4]

---

[4] This is not to say that a grievant who loses a Step Three arbitration must appeal to Step Four and then arbitrate at that level before proceeding to federal court.  That would require a judicial rewriting of the CBA, which makes clear that Step Four is designed for a different type of dispute than Steps One through Three, and does not sit in an appellate

**B. Initiation of the Remedy Hearing Rendered the Reeves Award Not Final and Binding**

To its credit, the Union appears to have adhered to the CBA's grievance procedures in the lead-up to the Reeves Award in 2022; USPS does not contend otherwise. The operative question, then, is whether the Reeves Award is final and binding, and thus a suitable subject for judicial review. The Court concludes that, although it may have been final and binding at the time it was rendered, the Union's decision to initiate a remedy proceeding fatally undermined that finality.

The notion that "an arbitration award must be final and binding before a district court may vacate or enforce it" is called the "complete arbitration rule." *Am. Postal Workers Union v. U.S. Postal Serv.*, 422 F. Supp. 2d 240, 246 (D.D.C. 2006) (collecting cases). An arbitral award is not yet complete if "a substantive task remain[s] for the arbitrator to perform." *Id.* at 246 (quoting *McKinney Restoration Co. v. Ill. Dist. Council No. 1*, 392 F.3d 867, 871 (7th Cir. 2004)). Conversely, an award is considered complete if "it is 'intended by the arbitrator to be his complete determination of every issue submitted to him.'" *Id.* (quoting *McKinney*, 392 F.3d at 871).

The parties present the Court with dueling textual indicators of finality. First, USPS notes that Arbitrator Reeves stated in his award that he would retain jurisdiction over the dispute until USPS was in compliance with his award. Mot. to Dismiss at 7. The Union counters that "boilerplate language generally retaining jurisdiction does not make an award nonfinal." Mot. for Summ. J. at 12 (quoting *Am. Postal Workers Union*, 422 F. Supp. 2d at 246 n.3).

On this narrow point, the Court agrees with the Union: Boilerplate language, such as a generic retention of jurisdiction, is a weak indicator of finality. However, the Union next argues that the Reeves Award was final and binding because the CBA provides that "[a]ll decisions of an

---

posture in relation to them. It is rather to say that, if a dispute reaches *either* Step Three *or* Step Four, the parties must arbitrate before submitting their case to federal court.

12

arbitrator will be final and binding." *Id.* at 5 (citing CBA Art. 15 at 100). The Union is hoisted with its own petard: this language is every bit as "boilerplate" as Arbitrator Reeves's statement retaining jurisdiction. To understand why, imagine that the Court took this language from the CBA literally. In that case, *every* "decision" made by an arbitrator, even the most trivial interlocutory order, would constitute a "final and binding" arbitration ripe for judicial review; a party could submit the case to federal court based on something as inconsequential as a scheduling order.

Furthermore, it is not uncommon for an arbitrator to decouple liability and remedy determinations, deciding liability first and purposefully leaving the remedy to be determined in later proceedings. *See, e.g.*, *Am. Postal Workers' Union*, 646 F. Supp. 2d at 2. Under the Union's proposed reading of the CBA, such a dispute could be submitted to the Court as soon as the liability determination is decided, subverting the express will of the arbitrator and disrupting the bargained-for grievance process at its most critical juncture—an outcome that courts have unsurprisingly resisted. *See id.* at 3–4 ("An arbitration award that postpones the determination of a remedy is not final and binding."); *cf. Am. Postal Workers Union*, 422 F. Supp. 2d at 246–47 (holding that "the mere fact that [the parties] later wrote" to the arbitrator to repeat a request made to him prior to issuance of the arbitral award "[did] not negate the finality of the award"). The Court will not assign dispositive weight to the CBA's "final and binding" clause because doing so would eviscerate the complete arbitration rule, which exists precisely to "ensure[] that courts will not become incessantly dragooned into deciding narrow questions that form only a small part of a wider dispute otherwise entrusted to arbitration." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 815 F.3d 154, 160 (4th Cir. 2016).

To reiterate, instead of boilerplate language contained either in the CBA or the award itself, the measure of a complete arbitration is, first, whether the award resolves all issues submitted to the arbitrator, and second, whether it appears that the arbitrator understood his or her job to be done. *See Am. Postal Workers Union*, 422 F. Supp. 2d at 246. On its face, the Reeves Award appears to have been final and binding when it was rendered, insofar as it resolved all questions of liability (by holding that USPS was not in compliance with the prior arbitration awards) and remedy (by ordering USPS to permit TTOs to perform spotting instead of private contractors).

However, the Union disturbed the finality of the award by invoking Arbitrator Reeves's jurisdiction and requesting a remedy hearing. As discussed above, USPS agreed to the hearing and communicated the request to Arbitrator Reeves, who evidently assented to hearing the dispute by providing his dates of availability. At that time, then, Arbitrator Reeves would have subjectively understood that some "outstanding issues remained to be resolved" by him. *Am. Postal Workers Union*, 422 F. Supp. 2d at 246. Indeed, Arbitrator Reeves's statement of retaining jurisdiction, though not legally significant in isolation, suggests he foresaw that the issue of USPS's noncompliance might again rear its head; when the Union invoked his jurisdiction to deal with that very issue, Arbitrator Reeves would have understood that it was again his turn at the helm. That being the case, his prior award—now the basis for yet another round of liability and remedy determinations—is no longer final. Having voluntarily sought and secured the agreement of all relevant stakeholders to proceed with arbitration, the Union cannot now claim that it has exhausted its arbitral remedies with respect to the subject matter of that arbitration.[5]

---

[5] The Union points out that "Article 15 is silent on non-compliance with arbitration awards," and argues that "[a]lthough the Union often addresses the Postal Service's non-compliance with awards through arbitration, it does so at its discretion." Mot. for Summ. J. at 11. The Union may be correct that it was not required to invoke Arbitrator Reeves's jurisdiction and initiate a remedy hearing in the first place. But that is beside the point; what matters is that the Union *did* set the remedy hearing in motion, and get the agreement of both the Postal Service and the arbitrator himself to proceed with arbitration. Having done so, the Union must follow that procedure to its conclusion.

### C. The Union Failed to Exhaust Arbitral Processes at Step Four

The Union's procedural default at Step Four is somewhat more straightforward. As discussed above, a Step Four dispute requires submission to an arbitrator before the case may be referred to the federal courts. It is undisputed that, unlike the prior Step Three dispute that culminated in the Reeves Award, no arbitration *ever* took place to resolve the Union's Step Four dispute, let alone a final and binding one. It appears, therefore, that the Union may not litigate the content of its Step Four dispute in federal court until such an arbitration has run its course. The Union raises two arguments as to why its case should nevertheless be allowed to proceed in federal court, both of which are unavailing.

First, the Union argues that its Step Four dispute is now wholly irrelevant because, as noted above, it has been withdrawn. Pl.'s Reply at 2. But the Court has already explained that failure to exhaust contractual dispute resolution procedures goes to the Court's subject-matter jurisdiction, and "[i]t is a firmly established rule that subject matter jurisdiction is tested as of the time of the filing of the complaint." *Delfani v. U.S. Capitol Guide Bd.*, No. 03-cv-949-RWR, 2005 WL 736644, at *2 (D.D.C. Mar. 31, 2005) (citing *Rosa v. Resol. Tr. Corp.*, 938 F.2d 383, 392 n.12 (3d Cir. 1991) (collecting cases)). "Further, if subject matter jurisdiction does not exist at the outset of the litigation, it cannot automatically be created by factual events that occur after the complaint is filed." *Landmark Health Sols., LLC v. Not for Profit Hosp. Corp.*, 950 F. Supp. 2d 130, 135 (D.D.C. 2013) (citing *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008)). Just as it is "well settled" that a party cannot manufacture diversity jurisdiction by changing its domicile after the filing of a complaint, *see Saadeh v. Farouki*, 107 F.3d 52, 57 (D.C. Cir. 1997), a party cannot undo the jurisdiction-vitiating effects of a parallel arbitral proceeding simply by terminating that arbitration midway through the litigation. To hold otherwise would

15

encourage wasteful litigation and forum-shopping: a grievant subject to the CBA would have every incentive to pursue Step Four and federal judicial proceedings simultaneously, only to eventually back out of whichever forum is the latter to act on his or her dispute. In sum, the Union's late-breaking withdrawal of its Step Four dispute has no legal significance; it was pending when the Complaint was filed, which is all that matters for jurisdictional purposes.

Second, the Union correctly reiterates that Step Four is an independent dispute mechanism, not an appellate stage that follows after a Step Three dispute. The Union further insists that its Step Four proceeding had nothing to do with its Step Three dispute: It was framed as an interpretive dispute about whether arbitral awards are final and binding, rather than about the specific matter of the Postal Service's noncompliance with the Reeves Award. Pl.'s Reply at 2. USPS's representatives appear to agree, and indeed have taken the position that Step Four is an inappropriate forum for adjudicating compliance with arbitral awards. *See* Richardson Email at 2 ("To be clear, this allegedly national interpretive issue is not about the Denver, CO NDC."). Therefore, the pendency of the Step Four interpretive dispute should not inhibit judicial review of the supposedly separate issue at the heart of the Complaint and the abandoned Step Three dispute—to wit, whether USPS is complying with the Reeves Award. Pl.'s Reply at 2.

This argument fares no better. Notwithstanding the parties' seeming agreement that the two disputes are unrelated, the Union's own representations confirm that the opposite is true: the Step Four dispute was expressly intended to draw attention to USPS's noncompliance with the Reeves Award at the Denver NDC, and to afford the Union an additional opportunity to discuss the Reeves Award with USPS decisionmakers. 1st Cash Decl. ¶¶ 18–19. Consistent with this narrative, USPS's Director of Contract Administration, Shannon Richardson, avers that the parties have been unable to reach a settlement of the Step Four dispute "in part because the APWU

16

interprets Arbitrator Zane[] [Reeves's] award as giving it the exclusive right to 'spot' every tractor trailer that enters the Denver NDC every day, and has taken the position that the Postal Service will not be in compliance with the award until it . . . requires Union TTOs to 'spot' every trailer." 2d Richardson Decl. ¶ 9. It is abundantly clear that USPS's alleged noncompliance with the Reeves Award is the central issue in the abandoned Step Three dispute, the now-withdrawn Step Four dispute, and the Complaint alike. Therefore, the Union's failure to exhaust its Step Four remedial procedures, like its failure to exhaust its Step Three remedial procedures, divests this Court of subject-matter jurisdiction to consider the merits of its Complaint.[6]

## IV. USPS'S ALLEGED HISTORY OF NONCOMPLIANCE DOES NOT EXCUSE THE EXHAUSTION REQUIREMENT

The Union raises one final argument against dismissal: USPS's long-running pattern of non-compliance with arbitral awards has rendered the contractual dispute-resolution mechanisms "unsatisfactory" and "unworkable," thus excusing their obligation to pursue those remedies to completion. *See* Mot. for Summ. J. at 14 (first citing *Am. Postal Workers' Union*, 646 F. Supp. 2d at 3, and then citing *Nat'l Post Off. Mail Handlers*, 594 F.2d at 991–92).

---

[6] In *Communications Workers of America, AFL-CIO v. Verizon Services, Inc.*, an arbitrator rendered an award in a dispute between the plaintiff union and the defendant. 404 F. Supp. 2d 62, 64–65 (D.D.C. 2005). After the award had been issued, the plaintiff submitted and then withdrew a separate grievance. *Id.* at 70. The defendant argued that the plaintiff's decision to file this separate grievance after the award had come down "amount[ed] to a concession by the Union" that the subject matter of the withdrawn grievance "was not part of the . . . arbitration." *Id.* The Court rejected this argument, holding that "[t]he Union's strategic decisions based on a possible reading of the award do not have any bearing on this Court's reading of the award." *Id.*

The Union cites this case in its Reply brief, though it is not entirely clear why. *See* Pl.'s Reply at 2. The Union may be arguing that its own "strategic decision" to initiate its Step Four dispute has no bearing on the Court's subject-matter jurisdiction to entertain its Complaint. But if so, that would be a misinterpretation of this passage from *Communication Workers of America*, which counsels only that a plaintiff's subsequent decision to initiate a grievance should not affect the Court's interpretation of the *scope of the underlying award*. The scope of the Reeves Award, of course, is not in issue in this case. The operative question instead is whether the scope of the Step Four dispute and the scope of the Complaint overlap, such that the Union's failure to exhaust arbitral procedures at Step Four divests the Court of jurisdiction to consider the Complaint. For the reasons discussed above, the Court concludes that they do overlap, and nothing in *Communication Workers of America* suggests otherwise.

Though it is true in principle that a sufficiently egregious pattern of repetitive noncompliance rising to the level of "unworkab[ility]" may excuse the requirement of exhaustion, the Court is not persuaded that this dispute presents such a case. The Reeves Award details that, over the years, USPS has made some efforts, however inadequate they may be, to comply with the arbitrators' awards. *See* Reeves Arbitration Award at 7 (describing the building of a "Guard Shack" at the entrance to the Denver NDC yard and creation of a procedure requiring private drivers to swipe a badge to gain entry); *id.* at 9 (stating that USPS had upgraded its security cameras in response to the arbitration awards). More importantly, the Reeves Award was the first to specifically require USPS to use Union TTOs for all truck spotting, and the dispute has not returned to arbitration since that order was entered. Therefore, as in *American Postal Workers' Union*, "APWU has not shown that the exhaustion of remedies is unworkable," and the exhaustion requirement is therefore not excused. 646 F. Supp. 2d at 4.

## V. CONCLUSION

The Union may be frustrated that it must exhaust arbitral remedies before bringing suit in federal court, despite USPS's alleged pattern of recalcitrance toward arbitrators. Indeed, the Union is at pains to emphasize that dismissing this case will only result in it "chas[ing] its tail in never-ending circles of arbitrations." Mot. for Summ. J. at 15. But this decision is necessary to effectuate the parties' mutually bargained-for dispute resolution procedures contained in the CBA, which are buttressed by a strong federal policy favoring arbitration of labor disputes. Dismissal is also necessary to discourage future gamesmanship by parties to a collective bargaining agreement, who might otherwise be tempted to try to evade their duties to arbitrate by strategically initiating and withdrawing from arbitral channels when it suits them. To the extent that this Opinion prolongs the Union's efforts to achieve relief for USPS's alleged contumacy, that is a problem of the Union's own making, and one that, in any event, the Court is without jurisdiction to fix.

Because the Court lacks subject-matter jurisdiction, the defendants' Motion to Dismiss will be **GRANTED**, and the plaintiffs' Motion for Summary Judgment will be **DENIED**. An Order consistent with this Opinion will issue separately.

Date: 3/25/25

Royce C. Lamberth
United States District Judge